UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LIANA DROUILHET                                       CIVIL ACTION

VERSUS                                                NO. 24-367

DANA A. BERKOWITZ, *et al.*                           SECTION M (4)


## ORDER & REASONS

Before the Court is a motion to remand filed by plaintiff Liana Drouilhet.[1]  Defendants

Dana Berkowitz and State Farm Mutual Automobile Insurance Company ("State Farm") respond

in opposition,[2] as does defendant Allstate Insurance Company[3] ("Allstate") (collectively,

"Defendants").  Drouilhet replies in further support of her motion,[4] and Berkowitz and State Farm

submit a surreply in further opposition.[5]  Having considered the parties' memoranda, the record,

and the applicable law, the Court issues this Order & Reasons granting the motion because

Defendants' removal was untimely.

## I.    BACKGROUND

This matter involves an automobile accident occurring on St. Charles Avenue in New

Orleans, Louisiana, on May 20, 2023.  Drouilhet alleges that on that date, Berkowitz was operating

a vehicle owned by defendant Patricia Close when she rear-ended Drouilhet's vehicle, causing her

severe injuries.[6]  On June 20, 2023, Drouilhet filed suit in the Civil District Court for the Parish of

Orleans against Berkowitz, Close, Allstate, as liability insurer of Close's vehicle, State Farm, as

---

[1] R. Doc. 6.
[2] R. Doc. 10.
[3] R. Doc. 11.
[4] R. Doc. 13.
[5] R. Doc. 16.
[6] R. Doc. 1-2 at 2.

Berkowitz's liability insurer, and Progressive Insurance Company ("Progressive"), as plaintiff's underinsured motorist carrier.[7]  In the complaint, Drouilhet alleges that she, Berkowitz, and Close are citizens of Louisiana, while the three insurers are foreign insurance companies.[8]

On February 9, 2024, Defendants removed the action to this Court, alleging that it has diversity subject-matter jurisdiction over this matter because the amount in controversy exceeds $75,000 and complete diversity exists between the parties.[9]  In particular, they allege that Drouilhet is a citizen of Louisiana, Berkowitz is a citizen of Hawaii, Close is a citizen of South Carolina,[10] Allstate and State Farm are citizens of Illinois, and Progressive is a citizen of Ohio.[11]  Defendants further allege that they first ascertained that the action was removable on January 22, 2024, when they received discovery responses from Drouilhet stating that she is seeking $800,000 in damages and anticipates a $200,000 surgery.[12]  Drouilhet now seeks to remand the matter back to state court.

## II.    PENDING MOTION

In the motion to remand, Drouilhet contends that the removal was untimely because it was not accomplished within 30 days of the Defendants' being served.[13]  Drouilhet also argues that complete diversity does not exist between the parties because Berkowitz is and was a citizen of Louisiana at the time of the accident, at the time the lawsuit was filed, and at the time Berkowitz was served, even though, following the accident, Berkowitz temporarily moved to Hawaii for her

---

[7] *Id.* at 1-2, 4-5.

[8] *See id.* at 1-2.

[9] R. Doc. 1 at 1-3.

[10] Although the notice of removal states that Close is a citizen of South Carolina, citing her Allstate automobile insurance policy, the policy's declarations page provides a Washington Allstate agency address (R. Doc. 1-4 at 7) and her proof of insurance card is labeled a "Washington Motor Vehicle Liability Insurance Identification Card" (*id.* at 5).  Only her mailing address lists a South Carolina address.  *Id.* at 7.  Nonetheless, because the Court finds that the removal was untimely, Close's domicile is ultimately irrelevant.

[11] R. Doc. 1 at 3.

[12] *Id.* at 4.

[13] R. Doc. 6-1 at 4-6.

husband's work.[14]   Droulihet points to the fact that Berkowitz presented a Louisiana driver's license and a Louisiana-issued insurance card at the accident scene.[15]   She further contends that Berkowitz is registered to vote in Louisiana and that Berkowitz and her husband still own a house in New Orleans.[16]

In opposition, Berkowitz and State Farm insist that the removal was timely because it was filed within 30 days of their receiving Droulihet's answer to interrogatories, which they say constitutes "other paper" from which they first ascertained that the case was removable.[17] Specifically, in response to an interrogatory asking her to "state the specific amount [she] seek[s] as damages," Droulihet responded: "$800,000.00.  *Moore v. Kenilworth Kailas Properties*, 865 So.2d 884 (La. App. 4 Cir. 2004).   Cervical spine surgery will cost at least $200,000.00."[18] Berkowitz and State Farm also maintain that complete diversity exists because Berkowitz was a citizen of Hawaii at the time the lawsuit was filed and when the matter was removed to this Court.[19] As support, they point to Berkowitz's Hawaii driver's license, which was obtained on June 21, 2023, and the declarations that Berkowitz is registered to vote in Hawaii, her children are enrolled in school in Hawaii, she and her husband purchased a house in Hawaii on November 1, 2023, and she and her husband listed their New Orleans home for sale in 2023 and again in 2024.[20]

Allstate also opposes the motion, arguing that despite Droulihet's reference to Close and Berkowitz as "Louisiana Defendants," Close is a citizen of Washington, and has been for almost

---

[14] *Id.* at 2-3.
[15] *Id.* at 2, 9.
[16] *Id.* at 3, 9.
[17] R. Doc. 10 at 10-11.
[18] R. Doc. 1-6 at 9.
[19] R. Doc. 10 at 1-2.
[20] *Id.* at 5.

3

45 years.[21]  Allstate also contends that removal was timely for the same reasons expressed by Berkowitz and State Farm.[22]

In reply, Drouilhet argues that while Defendants removed the case within 30 days of receiving her discovery response, that was not when they first ascertained that the case was removable.[23]  Instead, says Drouilhet, Defendants first learned that the case was removable on December 21, 2023, when she sent them a settlement demand letter for $800,000.[24]  That letter, which attached copies of Drouilhet's then-current medical records and bills, and after listing multiple injuries which she claims are reflected in the records and were caused by the accident, states in part:

> Objective injuries of the lumbar spine in this jurisdiction can bring up to $800,000.00, which I have actually been awarded at trial.  *Moore v. Kenilworth Kailas Properties*, 865 So.2d 884 (La. App. 4 Cir. 2004 ).  Lumbar spine surgery will cost at least $200,000.00.

> Ms. Drouilhet hereby demands $800,000.00, plus medicals, plus the cost of surgery to resolve this matter fully and completely.

> Applying the Louisiana Supreme Court's ruling in *Betty McGee v. A. C. and S. Inc.*, 933 So.2d 770 (2006), Ms. Drouilhet's injuries coupled with medical treatment to date and future medical treatment, far exceed the policy limits available from State Farm.[25]

Drouilhet therefore argues that the removal was untimely because the notice of removal was not filed within 30 days of the Defendants' receipt of this "other paper" first informing them that the case was removable.[26]

---

[21] R. Doc. 11 at 1-2.
[22] *Id.* at 3-5.
[23] R. Doc. 13 at 2-3.
[24] *Id.* at 2-4.
[25] R. Doc. 13-2 at 1-2.
[26] R. Doc. 13 at 2-5.

In their surreply, Berkowitz and State Farm suggest that the settlement demand letter does not qualify as "other paper" because it "did not contain an honest assessment of damages."[27] Specifically, they contend that the attached medical records do not contain an affirmative recommendation of surgery and that the medical bills total only $14,031.[28]  They then state that unlike the demand letter, the subsequent discovery response constituted "other paper" because Drouilhet attached updated medical records and bills, which showed that her medical expenses had increased to $36,841 and that Drouilhet recently underwent a lumbar rhizotomy.[29]

## III.   LAW & ANALYSIS

### A.   Remand Standard

A defendant may remove from state court to the proper United States district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  "A federal district court has subject matter jurisdiction over a state claim when the amount in controversy is met and there is complete diversity of citizenship between the parties."  *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citing 28 U.S.C. § 1332(a)).  Because federal courts have only limited jurisdiction, the removal statute is strictly construed, and any doubts or ambiguities are resolved against removal and in favor of remand.  *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).  The party seeking removal has the burden of establishing "that federal jurisdiction exists and that removal was proper."  *Manguno*, 276 F.3d at 723.  When a state court petition does not assert the amount of monetary

---

[27] R. Doc. 16 at 1-3.

[28] *Id.* at 3-4.

[29] *Id.* at 4-5.  Defendants also argue that Drouilhet's reply brief was untimely because it was not filed two working days before the submission date, citing Local Rule 7.5.  Under the recently revised rule, effective January 1, 2024, a reply brief can be filed without leave of court up until 4:00 p.m. of the second working day before the submission date, which would be Tuesday for a Thursday submission date, as here.  Because Drouilhet filed her reply before 4:00 p.m. on Tuesday, March 19, it was timely.

damages, the defendant must prove that the amount in controversy exceeds $75,000 by a preponderance of the evidence. *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999). This can be accomplished "(1) by demonstrating that it is 'facially apparent' that the claims are likely above $75,000, or (2) 'by setting forth facts in controversy – preferably in the removal petition, but sometimes by affidavit – that supports a finding of the requisite amount.'" *Id.* (quoting *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999)).

### B. Timeliness of Removal

The time limits for removal are set forth in 28 U.S.C. § 1446(b). Generally, a civil action must be removed within 30 days after the defendant receives a copy of the initial pleading "setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter." *Id.* § 1446(b)(1). However, if the case is not removable based on the initial pleading, "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3). "The information supporting removal in a copy of an amended pleading, motion, order or other paper … must be unequivocally clear and certain to start the time limit running." *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 608-09 (5th Cir. 2018) (alteration, footnote, and quotations omitted). To that end, the Fifth Circuit has held that "Section 1446(b)(3)'s removal clock begins ticking upon receipt of the" document constituting the "other paper." *Id.* at 612.

6

**C. Defendants' Removal Was Untimely**

The basis for removal was not immediately apparent from Drouilhet's initial pleading, so Defendants had 30 days to remove the case after they received "other paper" from which they could first ascertain that the case was removable. Defendants removed the action based on Drouilhet's January 22, 2024 discovery response, which informed them that she seeks $800,000 in damages and that a cervical spine surgery costs at least $200,000. But one month earlier – and approximately 50 days before removal – Drouilhet sent a settlement demand to counsel for Defendants, similarly stating that she requires a $200,000 surgery and offering to settle the matter for $800,000.

A post-complaint demand letter may be used as evidence to satisfy the amount-in-controversy requirement, so long as the letter "is not plainly a sham." *See Addo v. Globe Life & Accident Ins. Co.*, 230 F.3d 759, 762 (5th Cir. 2000). In other words, "[s]ettlement demand letters evidence the amount in controversy insofar as they represent a plaintiff's actual valuation of her claims." *Marullo v. Dollar Gen. Corp.*, 2014 WL 3587879, at *2 (E.D. La. July 21, 2014) (citing *Cole v. Knowledge Learning Corp.*, 2009 WL 1269591, at *4 (E.D. La. May 6, 2009), *aff'd*, 416 F. App'x 437 (5th Cir. 2011)). Accordingly, this Court, as well as other sections of this court, have routinely upheld removal by defendants based upon amounts contained in plaintiffs' post-complaint settlement demand letters. *See, e.g.*, *Bryan v. Walmart Inc.*, 2023 WL 8890341, at *3 (E.D. La. Dec. 26, 2023) (finding that defendant satisfied its burden of showing that the amount-in-controversy requirement was met by pointing to a $150,000 pre-suit settlement demand letter and a $105,000 post-suit settlement demand letter); *Wawrzycki v. Bales*, 2019 WL 4894557, at *4 (E.D. La. Oct. 4, 2019) (finding that plaintiffs' post-complaint settlement offer, which exceeded $75,000, triggered the period of removability under § 1446(b)(3)); *Marullo*, 2014 WL 3587879,

at *2 (finding that defendants proved that the amount in controversy exceeded the jurisdictional threshold since plaintiffs sent a post-suit demand letter seeking, as to each individual, $75,000 in general damages and $21,000 in medical expenses); *Cole*, 2009 WL 1269591, at *4-5 (holding that defendant demonstrated by a preponderance of the evidence that the amount-in-controversy requirement was met due to plaintiff's post-suit settlement demand for $150,000).

Berkowitz and State Farm argue that the settlement demand letter did not contain an honest assessment of Drouilhet's claims, apparently contending that the demand letter was a sham. The Fifth Circuit in *Addo* considered whether a plaintiff's three-sentence demand letter, which sought 50 times the amount offered by the defendant, should constitute "other paper" for purposes of triggering the defendant's 30-day removal clock. 230 F.3d at 760-62. The demand letter stated: "In our telephone conversation of August 21, 1997, it is my understanding that you offered $5,000 to settle the above referenced case. We counter offer with $250,000. This offer will stand until Friday, September 5, 1997." *Id.* at 760 n.1. Despite no party's explanation for the high offer, the Fifth Circuit concluded that the letter constituted "other paper," triggering the defendant's 30-day window to remove the case since the letter was voluntarily sent by the plaintiff and was "not plainly a sham." *Id.* at 762.

Since *Addo*, other sections of this court have looked to whether a plaintiff was posturing in the settlement demand letter to determine whether it was a sham. For example, in *Russell v. Home State County Mutual Insurance Co.*, the court held that a settlement demand (set out in two letters) was "not plainly a sham" where plaintiff's counsel offered to settle the case for $150,000 and informed the defendant that he has "gotten as much as $175,000.00" for similar injuries. 2003 WL 22697179, at *3 (E.D. La. Nov. 10, 2003). The court explained that the letters "indicate[d] that plaintiff was not merely posturing, but was relaying an accurate reflection of what he believes

8

the case to be worth." *Id.*  And, in *Cole*, the court concluded that a letter – which recited plaintiff's alleged injuries, computed the alleged special damages suffered, and then set out a final settlement demand – was "not plainly a sham," explaining that there was "no indicia of posturing or a lack of seriousness in the communication of [the] offer."  2009 WL 1269591, at *4.

Here, the demand letter was voluntarily sent by counsel on behalf of Drouilhet, gave no indicia of posturing, and thus was not plainly a sham.  To be sure, in the letter, Drouilhet demanded the same amount for damages and the cost of surgery as later contained in her interrogatory responses – couched in virtually identical language.  Berkowitz and State Farm argue that the medical records attached to Drouilhet's settlement demand do not contain an affirmative recommendation of surgery and that the medical bills only total roughly $14,000.  But nothing in the letter shows a lack of seriousness on her part.  Indeed, just as in *Russell*, Drouilhet's counsel cited to a similar range of damages awarded to a prior client for similar injuries.  While the attached medical bills did not total $75,000, the medical records did list treatment options, including "spinal injections and surgery," and stated that Drouilhet "is a surgical candidate if satisfactory status is not achieved," recommending certain spinal fusions.[30]  Future surgeries are properly considered in determining the amount in controversy.  *See, e.g.*, *Neyland-Jones v. Liberty Mut. Pers. Ins. Co.*, 2019 WL 6713416, at *3 (E.D. La. Dec. 10, 2019) ("While it is true that [the demand letter] recited medical bills of less than $25,000.00, it also recited that a right shoulder surgery was recommended at a cost of $30,000.00, and assumed that the left shoulder would cost the same.  The letter also reflected that a three-level cervical fusion estimated to cost $125,000.00 was recommended.  While ultimately a jury may have found causation was lacking to link these damages to the injuries caused by the subject accident, that does not mean that the demand letter was a sham.  To the contrary,

---

[30] R. Doc. 13-2 at 22.

the letter included detailed medical records and a quantum study of factually similar cases."). Berkowitz and State Farm's argument that the discovery responses, unlike the demand letter, constituted "other paper" because they included roughly $36,000 worth of medical bills and showed that Drouilhet underwent a lumbar rhizotomy is unpersuasive.  The amount of the medical bills is not materially different, and the medical records provided with the demand letter had already indicated that a rhizotomy was a treatment option.[31]

Regardless, it is not Drouilhet's burden to prove her damages at this stage of the litigation. The fact remains that Drouilhet offered to settle the case for $800,000, and "[f]ederal courts give significant weight to the value plaintiffs attach to their claims."  *Waters v. Lowe's Home Ctrs., LLC*, 2019 WL 1785610, at *1 (E.D. La. Apr. 24, 2019) (finding it "obvious" from the plaintiffs' settlement demand of $166,508.29 and the statement of their subjective belief that the case was worth more than $75,000 that the demand – even if "mere hyperbole" – suffices to trigger removal).  Defendants were on notice that Drouilhet is seeking over $75,000 when they received the settlement demand letter in December 2023.  They did not remove the case until February 9, 2024, so the removal was untimely.

Because the Court finds that the removal was untimely, it need not address the parties' arguments regarding the respective citizenships of Berkowitz and Close.

IV.    **CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that Drouilhet's motion to remand (R. Doc. 6) is GRANTED.

IT IS FURTHER ORDERED that this matter is REMANDED to the Civil District Court for the Parish of Orleans.

---

[31] *See* R. Doc. 13-2 at 16.

New Orleans, Louisiana, this 21st day of March, 2024.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE